IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PEDRO RODRIGUEZ-CORTEZ,<br>Institutional ID No. 62394080, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | CIVIL ACTION NO.<br>5:16-CV-061-BQ |
| v. | ) <br> ) | ECF |
| GILES W. DALBY CORRECTIONAL<br>FACILITY, *et al.*, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Pedro-Rodriguez-Cortez filed this civil rights action *in forma pauperis* on March 30, 2016, seeking damages for his claims that prison officials at Giles W. Dalby Correctional Facility (Dalby Facility) put him in segregation without cause, restrained him for an extended period of time during a visit to the hospital, fired him from employment after a work-related accident, and failed to provide him adequate medical care. Rodriguez-Cortez seeks monetary relief. The United States District Court reassigned the case to the undersigned United States Magistrate Judge on May 19, 2016.

### I.   Discussion

#### A.   Dismissal for Want of Prosecution

The court must screen a complaint brought *in forma pauperis* and dismiss it if the allegation of poverty is untrue or the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2014).

On July 5, 2016, the court sent Rodriguez-Cortez a Notice of Availability of Magistrate Judge to Exercise Jurisdiction, and accompanying consent form. ECF No. 8. In order to further develop the facts alleged in his Complaint, the court ordered authenticated records from the Dalby Facility. ECF No. 9. The undersigned received records pertaining to Rodriguez-Cortez's allegations on August 3, 2016, and having received no response to its initial notice and consent forms (ECF No. 8), the court re-sent the notice and consent forms on August 19, 2016. ECF Nos. 10, 11. This mail was returned as undeliverable and indicated that Rodriguez-Cortez had been released. ECF No. 12. The authenticated records show a release date of July 26, 2016, and Rodriguez-Cortez has not provided an updated address. The form provided to Rodriguez-Cortez to complete his Amended Complaint explains that it is the prisoner's responsibility to inform the court of any change of address and its effective date, and states that failure to do so may result in the dismissal of the prisoner's complaint. ECF No. 5. Rodriguez-Cortez has not consented to proceed before the undersigned magistrate judge. Accordingly, the undersigned enters this Report and Recommendation pursuant to the order of transfer.

A district court has inherent authority under Rule 41(b) of the Federal Rules of Civil Procedure to *sua sponte* dismiss an action for want of prosecution. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–33 (1962); *Clofer v. Perego*, 106 F.3d 678, 679 (5th Cir. 1997). It is, therefore, recommended that the United States District Court dismiss Rodriguez-Cortez's Complaint for want of prosecution.

**B.     Dismissal Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A**

In the alternative, the undersigned has reviewed the authenticated records provided by the Dalby Facility with respect to Rodriguez-Cortez's claims and recommends that the case be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Rodriguez-Cortez alleges the

Defendants violated his constitutional rights by: (1) placing him in segregation for sixty days on April 8, 2013, without explanation; (2) shackling him for seventeen hours during a visit to the hospital, where prison officials refused to release his restraints so that he could use the restroom; (3) firing him from his job with the Food Services Department, purportedly in retaliation for filing an accident report after he slipped and fell on the job; and (4) providing improper medical treatment for various injuries sustained during his incarceration.

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a determination regarding the viability of the complaint, the court may consider reliable evidence such as the plaintiff's allegations and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that a court may dismiss a prisoner's *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

1.     **Segregation**

Rodriguez-Cortez alleges that Officer Mendez put him in segregation for a total of sixty days as punishment for assisting other inmates with the filing of their grievances. He claims Warden Bond and Lieutenant Suarez gave Officer Mendez permission to take this action, without asking about the circumstances that justified the punishment. In his Amended Complaint, Rodriguez-Cortez identifies April 8, 2013, as the date for this claim ("I was put into the Segregation Jail . . . for 60 days, and I had not done anything wrong on 4/8/2013.") (ECF 5, at 5).

3

The statute of limitations on a § 1983 claim is two years. *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005) (holding that Texas's statute of limitations period for torts "requires a claim to be brought no later than the same calendar day two years following the accrual of the cause of action"); *see Brown v. Dretke*, 184 F. App'x 384, 385 (5th Cir. 2006) (holding that the two-year statute of limitations began running on an arrestee's § 1983 claim for failure to advise her of the right to counsel when the events giving rise to the claim occurred). Generally, "a cause of action under section 1983 accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *Price*, 431 F.3d at 893 (quoting *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)).

The authenticated records from the Dalby Facility contain a Special Housing Report dated April 8, 2013. The report reflects that Rodriguez-Cortez would continue to live in special housing, citing two disciplinary violations supporting the decision (threatening bodily harm or other offense, and counterfeiting, forging, or reproducing documentation). Rodriguez-Cortez filed his Complaint on March 30, 2016 (ECF No. 1)—almost three years after his claim of improper segregation accrued. Rodriguez-Cortez does not allege that he did not know, or have reason to know, of the purported impropriety of his segregation until sometime after April 8, 2013. Thus, his claim against Officer Mendez, Warden Bond, and Lieutenant Suarez is barred by the statute of limitations, and it is recommended that it be dismissed.

Rodriguez-Cortez also alleges Warden Bond and Lieutenant Suarez violated his rights by giving Officer Mendez permission to keep him segregated. To the extent his claim is based on supervisory liability, it must also be dismissed.

A supervisor cannot be held liable based on the doctrine of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978). Generally, a supervisor is not liable for

4

actions of a subordinate that amount to a constitutional deprivation unless the supervisor was personally involved in the wrongful conduct or unless the supervisor "implement[s] a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). The misconduct of the subordinate must be "affirmatively link[ed]" to the action or inaction of the supervisor. *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

Rodriguez-Cortez appears to make claims against Warden Bond and Lieutenant Suarez because they allowed Officer Mendez to put Rodriguez-Cortez in segregation without inquiring into the reasons for doing so. Insofar as Warden Bond and Lieutenant Suarez operated as Officer Mendez's supervisors, they cannot be held liable for his conduct based on a theory of respondeat superior. These defendants are vicariously liable for the actions of Officer Mendez only if they were personally involved in the allegedly wrongful conduct, or if they implemented an unconstitutional policy that was the "moving force" behind a stay in the Special Housing unit that somehow violated the Constitution. Rodriguez-Cortez pleads no such facts, and the Special Housing Report cites specific violations of facially valid prison policies as the reason for keeping Rodriguez-Cortez in special housing. Therefore, Officer Mendez's conduct did not amount to a constitutional violation. Even assuming such a violation, Rodriguez-Cortez alleges no facts showing Warden Bond and Lieutenant Suarez's personal involvement in the matter. The Special Housing Report was signed by a person named "Sergeant Garcia," not by Officer Mendez, Warden Bond, or Lieutenant Suarez. Similarly, Rodriguez-Cortez has not alleged facts demonstrating that Warden Bond and Lieutenant Suarez implemented an unconstitutional policy. Thus, it is recommended that the claims against these three defendants be dismissed.

**2.     Restrained for seventeen hours during a hospital visit**

Rodriguez-Cortez alleges that he was transported to the University Medical Center emergency room on October 24, 2014, after slipping and falling while working for the Food Services Department. He claims prison officials kept him in restraints for seventeen hours during this trip, and refused to unshackle his hands when he asked them to do so in order to use the restroom. He does not allege a complete deprivation of his ability to use the restroom, just that he would have had to do so while shackled.[i] He named the investigating officer as the defendant because he could not recall the names of the officers who were with him at the hospital. This treatment, he claims, is a violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

A plaintiff's confinement is cruel and unusual only if it deprives the plaintiff of the minimal civilized measure of life's necessities. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The prisoner must establish the following: (1) under an objective standard, the conditions were so serious that they deprived the prisoner of the minimal measure of life's necessities, as when the conditions deny the prisoner a basic human need; and (2) under a subjective standard, the prison official acted with deliberate indifference to the prisoner's conditions of confinement. *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (quotations and internal citations omitted); *see Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

---

[i] On the Step 1 Inmate Grievance Form (Complaint, at 4 (ECF 1-1)), Rodriguez-Cortez admits the officer "removed the chaing (sic) from my waist . . . and said go ahead and use the badtroom (sic) . . . and that if I wanted to . . . use the [restroom] to go ahead [and] use it like that." The officer further advised Rodriguez-Cortez "he could not take off the restraints" to use the restroom (*id.*), which complied with Post Orders for Hospital Security Officers. *See* Complaint, at 6 (stating an inmate must be "fully restrained at all times by hand restraints, martin chain, and leg restraints" unless removal is deemed necessary for medical reasons *and* approved by the Shift Lieutenant).

The first part of the test is applied objectively. The court must determine if the conditions are "cruel and unusual" under "contemporary standards of decency." *Rhodes*, 452 U.S. at 345–47 (1981). A prison must provide for a prisoner's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). No specific standard applies to determine the contours of "contemporary standards of decency," but the judgment "should be informed by objective factors to the maximum possible extent." *Rhodes*, 452 U.S. at 345–47. The inmate must show that the risk he complains of is "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling*, 509 U.S. at 36. "Extreme deprivations" of minimal civilized measures of life's necessities or some basic human need are required to make out a conditions-of-confinement claim. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (subjecting prisoner to filthy cell for only three days was not extreme deprivation, especially since cleaning materials were made available to prisoner). A combination of conditions may deprive plaintiff of the minimal civilized measure of life's necessities if they create "a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth or exercise . . . ." *Wilson*, 501 U.S. at 304–05. The Fifth Circuit calls this the "totality of the conditions" test. *McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991); *see also Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983) (alleging cold, rainy, roach-infested jail cell, with scum-encrusted washing and toilet facilities stated a claim).

The second part of the test is applied subjectively, using the deliberate indifference test. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To establish deliberate indifference, a prisoner must show "the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that

7

such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). Thus, negligence will not support a claim of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

Here, Rodriguez-Cortez made a claim particular to only one condition of his confinement—the shackles on his wrists. His Complaint and the authenticated records do not indicate that any other conditions were at issue, such as the temperature of the room, the clothes he wore, or the quality or quantity of food provided to him. Rodriguez-Cortez did not allege that a combination of conditions was present to support his claims of deprivation. In fact, the incident occurred in the process of tending to one his basic human needs, the provision of medical care. The question, then, is whether keeping Rodriguez-Cortez in shackles for seventeen consecutive hours during a trip outside of the Dalby Facility is an extreme deprivation, considering the fact that all other basic human needs were otherwise adequately provided for, and that Rodriguez-Cortez could have relieved himself despite wearing restraints, albeit with some difficulty. This conduct simply does not amount to a deprivation of basic human needs sufficient to violate the Eighth Amendment. *See Reynolds v. Dormire*, 636 F.3d 976 (8th Cir. 2011) (holding that the prisoner failed to state an Eighth Amendment claim through allegations that officers refused to remove his restraints during a day-long trip to a hospital for a medical appointment, and refused his requests to use the restroom without restraints); *Cunningham v. Eyman*, 17 F. App'x 449 (7th Cir. 2001) (holding that sixteen hours in shackles, four or five of which were spent in soiled clothing, is uncomfortable, but not unconstitutional under the Eighth Amendment); *Key v. McKinney*, 176 F.3d 1083 (8th Cir. 1999) (finding no Eighth Amendment violation where the prisoner was handcuffed for twenty-four hours following disorderly conduct).

Rodriguez-Cortez has also failed to establish that the prison guards acted with deliberate indifference to his health or safety. He claimed the officers knew of his need to use the bathroom because he asked them to remove his shackles so that he could do so. His grievances in the authenticated record indicate that he complained of soreness from the shackles. According to the authenticated records, hospital security officers follow policies requiring the use of restraints at all times, unless removal is deemed medically necessary. Rodriguez-Cortez did not allege facts demonstrating that removal of his shackles was medically necessary, and the record does not support such a conclusion. Moreover, the officers were not deliberately indifferent to Rodriguez-Cortez's needs because there is no indication his conditions posed a substantial risk of harm. *See Hernandez v. Velasquez*, 522 F.3d 556 (5th Cir. 2008) (finding no deliberate indifference to a prisoner's needs where inmate was kept in a 5' by 9' cell for thirteen months, and only allowed to leave for showers). Soreness of his wrists does not evince a serious medical need or substantial risk of harm. *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) ("The legal conclusion of deliberate indifference, therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants.") (internal quotation marks omitted). Mere negligent treatment of a medical condition such as sore wrists does not constitute a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 105. Accordingly, it is recommended that Rodriguez-Cortez's claim against the officers who supervised his visit to the hospital be dismissed.

**3.     Retaliation**

On October 24, 2013, Rodriguez-Cortez slipped and fell while working for the Food Services Department. He alleges that Mrs. Copeland, the Dalby Facility employee who runs the Food Services Department, fired him after the accident in retaliation for filing an accident report and seeking compensation from the Dalby Facility's insurance plan.

To state a valid claim for retaliation under 42 U.S.C. § 1983, an inmate must advance factual allegations that support his claim. *See Whittington v. Lynaugh*, 842 F.2d 818, 819–20 (5th Cir. 1988) (upholding the dismissal of prisoner's retaliation claim as frivolous after a *Spears* hearing because the prisoner "advanced nothing but the claim itself without the slightest support of any factual allegations"). An inmate must allege facts that tend to establish "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). More pointedly, a prisoner "must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). He must allege facts that establish direct evidence of retaliatory motivation or "a chronology of events from which retaliation may plausibly be inferred." *Id.* Notably, "the mere fact than an undesirable action occurred after a long history of filing grievances against [a prison official] does not suffice to raise a plausible claim of retaliation." *Trevino v. Gutierrez*, 426 F. App'x 327, 330 (5th Cir. 2011). In other words, a mere personal belief that defendants retaliated against the prisoner does not suffice to raise a plausible claim for retaliation. *Id.*

Rodriguez-Cortez claims he was fired because he pursued an insurance claim to compensate him for the injuries he sustained in a slip and fall accident at work. The record, however, supports a non-retaliatory reason for terminating his employment. In the response to Rodriguez-Cortez's Step 2 grievance, Copeland explains that Rodriguez-Cortez spent working hours visiting with other inmates when he was supposed to be working. Grievances filed by Rodriguez-Cortez identify numerous disagreements with Copeland, including disputes over whether Rodriguez-Cortez was lying and stealing food, and whether he failed to perform work duties because of frequent and extended restroom breaks. The record also shows that Copeland

10

did not know Rodriguez-Cortez sought compensation for his injuries at the time she fired him. Overall, the record does not support a finding that Copeland intended to retaliate, or that her motivation for terminating Rodriguez-Cortez was anything other than his failure to perform his work responsibilities.   Through the grievance process, Rodriguez-Cortez claimed that the "real reason" for the loss of his employment was the slip and fall accident, but a prisoner "must allege more than his personal belief that he is the victim of retaliation." *Jones*, 188 F.3d at 325. Additionally, the facts alleged by Rodriguez-Cortez in his Complaint identify the claim itself, but nothing more.   A prisoner bears a heavy burden in claiming retaliation, and must do more than make mere conclusory allegations. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *see Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).   Therefore, it is recommended that the claim asserted against Rodriguez-Cortez's former employer be dismissed as frivolous because conclusory allegations of retaliation are insufficient to establish a constitutional claim for retaliation.   Where a prisoner is unable to establish a specific constitutional violation, his claim is not cognizable. *Jones*, 188 F.3d at 324–25.

**4.   Medical care**

Finally, Rodriguez-Cortez alleges that he received inadequate medical treatment from the Dalby Facility's medical department for various injuries, including an injured finger, an injury to his right hand, and a twisted ankle.   He named "Doctor Handford" and Kathy Medford as defendants.   His Amended Complaint claims he asked for the "correct treatment" for his injured finger, but he did not receive such treatment.   As a result, his finger healed, but it is not straight. He claims that the nurse he saw when he returned to the medical department for a twisted ankle made him wait for treatment because she was handling other patients with diabetes.   He further

alleges that the nurse subsequently said there was nothing she could do for him.  He claims the foregoing conduct violates the Eighth Amendment.

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care.  *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  To allege a constitutional violation, an inmate must show that the prison official acted with deliberate indifference toward his serious medical needs, resulting in an unnecessary and wanton infliction of pain.  *Id.*  "Deliberate indifference is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)) (internal quotation marks omitted).

To establish deliberate indifference, a prisoner must show more than mere negligence on the part of the defendants.  *See id.* at 347 ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.").  "A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006).  A mere disagreement with the course of medical treatment, however, does not state a claim for deliberate indifference.  *See Gobert*, 463 F.3d at 346–47; *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999).

Rodriguez-Cortez has not alleged facts rising to the level of deliberate indifference, and the record does not support any of his allegations.  The authenticated records show that Rodriguez-Cortez visited the medical unit on numerous occasions for several different claimed injuries.  One visit pertained to a pinkie finger injury that he sustained in the course of a separate slip and fall

12

incident, unrelated to the slip and fall accident previously discussed in the context of his other claims. Rodriguez-Cortez alleged that he did not receive the correct treatment for this injury. To the contrary, the records show medical providers administered a splint and supplied ice and pain medication. In another visit to the medical until, he complained of a hand injury resulting from a softball game. The authenticated records show that he was again given a splint to stabilize one of his fingers, and received Tylenol to treat swelling and pain. The record is replete with paperwork from the medical department detailing each of Rodriguez-Cortez's visits, including the diagnoses he received, the course of treatment provided, and the issuance of medical passes where injuries prevented him from working. Medical forms indicate that Rodriguez-Cortez failed to follow medical advice, either by not picking up prescriptions as directed or not attending scheduled appointments. The authenticated records do not show that medical department employees refused to treat Rodriguez-Cortez, ignored his complaints, or were deliberately indifferent to any of his medical needs. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that medical records of sick calls, examinations, medications, and diagnoses can rebut a prisoner's claims of deliberate indifference). Additionally, Rodriguez-Cortez's personal disagreement with the method and course of medical care provided does not amount to deliberate indifference in violation of the Eighth Amendment. *Gobert*, 463 F.3d at 346–47. Therefore, it is recommended that these claims be dismissed as well.

## II.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Rodriguez-Cortez's Complaint and all claims therein with prejudice pursuant Rule 41(b) of the Federal Rules of Civil Procedure for want of prosecution and, alternatively, in accordance with 28 U.S.C. § 1915(e)(2)(B) and 1915A.

13

Dismissal of this action should count as a qualifying dismissal—"a strike"—for purposes of the three strikes provision of the Prison Litigation and Reform Act (PLRA). This is Rodriguez-Cortez's third strike, *see* Order of Dismissal, *Pedro Rodriguez-Cortez v. Dalby C.F.*, 5:14-cv-012-BG (N.D. Tex. Oct. 28, 2014) (ECF No. 16), and *Pedro Rodriguez-Cortez v. Dalby Corr. Facility*, 611 F. App'x 207, 209 (5th Cir. 2015). Further, the dismissal should not release Rodriguez-Cortez or the institution of his incarceration from the obligation to pay the previously imposed filing fee. *See Williams v. Roberts*, 166 F.3d 1126, 1128 (5th Cir. 1997). Rodriguez-Cortez must therefore continue to pay the filing fee in monthly installments as ordered in the PLRA Filing Fee Order entered in this case.

### III.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: October 31, 2016

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE